**Rita WRIGHT et al.**

v.

**HOUSTON INDEPENDENT SCHOOL DISTRICT et al.**

*Civ. A. No. 70-H-1236.*

United States District Court,
S. D. Texas,
Houston Division.

Aug. 3, 1972.

As Amended Oct. 30, 1972.

Leona Weber, pro se, James K. Kelly, Houston, Tex., for plaintiffs.

Herbert Coffman, Houston, Tex., for intervening plaintiff.

Bracewell & Patterson, William Key Wilde and Kelly Frels, Houston, Tex:, Crawford Martin, Atty. Gen., James C. McCoy, Asst. Atty. Gen., Austin, Tex., for defendants.

**MEMORANDUM AND ORDER:**

SEALS, District Judge.

Plaintiffs—students of the Houston Independent School District—here seek to enjoin the District and the State Board of Education from teaching the theory of evolution as part of the District's academic curriculum and from adopting textbooks which present that theory without critical analysis and to the exclusion of other theories regarding the origins of man. Plaintiffs base their claim for relief upon the provisions of 42 U.S.C. § 1983. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343. The case is presently before the Court on Defendants' motion to dismiss for failure to state a claim.[1]

---

1. This case has been repeatedly delayed by a number of unfortunate circumstances. The principal Plaintiff, Mrs. Leona Weber, an obviously sincere and concerned parent, initiated the suit on November 17, 1970. A month later, the original counsel withdrew and a second attorney took up the case. Defendants filed their motion to dismiss on January 22, 1971. On March 29, 1971, a pretrial conference was held and the case was set on the Court's October trial assignment. On June 2, 1971, Mrs. Weber's second attorney asked for permission to withdraw. Upon granting this request, the Court directed Plaintiffs to submit the name of a new attorney within ten days. At Plaintiffs' request, the Court extended this date to August 1, 1971. Since Plaintiffs had not by that date been able to employ counsel, the Court granted a further indefinite extension, but set the case for the November trial assignment. The Court was notified on October 20, 1971, that Plaintiffs had retained new counsel, who requested and received permission to continue the case from the November docket. On November 17, 1971, however, this third set of attorneys asked for leave to withdraw, and the Court granted the motion. On December 6, 1971, the case was passed, at the request of Mrs. Weber, to the February 1972 trial assignment. Mrs. Weber agreed in open court that the case, if not prosecuted at that time, would be dismissed. At the February docket call, Plaintiff John R. Brown moved to intervene, which motion was opposed by Mrs.

Plaintiffs' principal contention is that the teaching of the theory of evolution in the Houston Independent School District inhibits Plaintiffs in the free exercise of their religion and constitutes an "establishment of religion," in contravention of the first amendment to the United States Constitution.[2] The theory of evolution is, according to Plaintiffs, presented by Defendants without critical analysis and without reference to other theories which purport to explain the origin of the human species. The "other theory" whose case Plaintiffs here champion is the explanation derived from the Bible, the basis of which is that man was created by God. In Plaintiffs' view, the theory of evolution is so inimical to the Creation account that its presentation as part of the academic curriculum should be deemed a direct attack upon Plaintiffs' religious beliefs by an organ of government. The State, by implicitly rejecting a central tenet of Plaintiffs' religion, is holding that religion up to contempt, scorn, and ridicule, and is thus acting to discourage, if not to restrain, Plaintiffs in the free exercise of their religion.

Plaintiffs also argue a constitutional deprivation in terms of the Establishment clause of the first amendment. Plaintiffs maintain that, by restricting the study of human origins to an uncritical examination of the theory of evolution, Defendants are lending official support to a "religion of secularism."[3] Under the guise of scientific theory, Plaintiffs submit that Defendants are engaged in the propagation of a doctrine that is fundamentally religious in nature, and thus, are "establishing" a particular religion in contravention of the first amendment.

Plaintiffs contend that Defendants' teaching of the theory of evolution violates the doctrine of neutrality which the Supreme Court has held must be State policy in matters of religion.[4] The principle of neutrality was most recently affirmed by the Court in Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968). In that case, the Court struck down an Arkansas statute which prohibited any teacher in a state school from teaching the theory of evolution. The Court had

" * * * no doubt that Arkansas has sought to prevent its teachers from discussing the theory of evolution because it is contrary to the belief of some that the Book of Genesis must be the exclusive source of doctrine as to the origin of man." *Epperson*, supra, at 107, 89 S.Ct. at 272.

---

Weber. The Court granted Dr. Brown permission to intervene on March 27, 1972. That attorney sought to withdraw as Mrs. Weber's counsel on April 5, 1972, although he would continue to represent Mrs. Drew. The Court granted leave to withdraw on April 13. On May 9, 1972, Mrs. Weber informed the Court of her inability to employ counsel, and, at her request, the Court granted her leave to proceed pro se. On June 14, 1972, Mrs. Weber, Mrs. Drew, and Dr. Brown each sought to bring in additional plaintiffs. On June 21, 1972, the Court held a hearing on Defendants' motion to dismiss, and subsequently, the case was taken under advisement. Leona Weber, on July 24, 1972, noticed the defendants of the intention to take oral depositions of Dr. George Garver, Dr. George Oser and Dr. Leonard R. Robbins on August 4, 1972, and the Court, on August 3, 1972, granted defendants' motion to quash the depositions.

2. The first amendment reads, in pertinent part:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof * * *"

The Supreme Court first recognized the applicability of this provision to the States in a concurring opinion by Justice Cardozo in Hamilton v. University of California, 293 U.S. 245, 55 S.Ct. 197, 79 L.Ed. 343 (1934).

3. In School District of Abington Township v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), the Supreme Court held that the State may not establish a "religion of secularism" in the sense of affirmatively opposing or showing hostility to religion and thus preferring those who believe in no religion over those who do believe.

4. See School District of Abington Township v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963).

Such a statute, since it

" * * * was confined to an attempt to blot out a particular theory because of its supposed conflict with the Biblical account, literally read,"

could not pass the test of religious neutrality whose standard the Constitution requires all organs of government to uphold. Id., at 109, 89 S.Ct. at 273.

Plaintiffs have thus attempted to draw an analogy between the Arkansas prohibition and the teaching of the theory of evolution in the Houston Independent School District. From that position, Plaintiffs would suggest an appropriately analogous remedy: an injunction against the teaching of the theory of evolution. But Plaintiffs have wholly failed to establish the analogy.

In the first place, Arkansas chose to promote a particular view regarding human origins by means of legislative enactment. It was clear to the Supreme Court

" * * * that fundamentalist sectarian conviction was and is the law's reason for existence." Id., at 108, 89 S.Ct. at 272.

Defendants, however, are not acting pursuant either to State law or school district regulation. Plaintiffs have not alleged that there exists even a school district policy regarding the theory of evolution. All that can be said is that certain textbooks selected by school officials present what Plaintiffs deem a biased view in support of the theory. This Court has been cited to no case in which so nebulous an intrusion upon the principle of religious neutrality has been condemned by the Supreme Court.

Neither have Plaintiffs alleged that Defendants attempt to discourage the free discussion of the subject of human origins. There has been no suggestion that Plaintiffs, or any other students, have been denied the opportunity to challenge their teachers' presentation of the Darwinian theory. Arkansas, on the other hand, prohibited any discussion of the subject of evolution.

In short, whereas Arkansas labelled as a criminal offense the mere reference to an entire body of scientific opinion, neither the State of Texas nor the Houston Independent School District has given legislative expression to any view of the subject of evolution. The State, at most, has a general policy of approving textbooks which present the theory of evolution in a favorable light. No position regarding human origins is even indirectly proscribed by State or District. Furthermore, Plaintiffs have failed even to assert the suppression of opposing ideas. Clearly, Defendants' "policy" (or lack thereof) regarding the theory of evolution is far removed from Arkansas' blanket censorship.

Plaintiffs' case depends in large measure upon their demonstrating a connection between "religion," as employed in the first amendment, and Defendants' approach to the subject of evolution.[5] The Court is convinced that the connection is too tenuous a thread on which to base a first amendment complaint.

In Cornwell v. State Board of Education, 314 F.Supp. 340 (D.Md., 1969), aff'd, 428 F.2d 471 (C.A. 4, 1970), a group of Baltimore children and their parents sought to enjoin the enforcement of a bylaw, adopted by the State Board of Education, requiring "the local school system to provide a comprehensive program of family life and sex education in every elementary and secondary school for all students." Among other contentions, the Plaintiffs asserted that the sex education program constituted an establishment of religion and that its implementation denied to them the free exercise of their religious beliefs: Reminding Plaintiffs that the first amendment does not say that in all

5. In Davis v. Beason, 133 U.S. 333, 10 S.Ct. 299, 33 L.Ed. 637, the Supreme Court said that

"The term 'religion' has reference to one's view of his relation to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will." Id., at 342, 10 S.Ct. at 300.

respects there must be a separation of church and state, the District Court applied the test devised by the Supreme Court in School District of Abington Township v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), for determining the validity of a legislative provision under the Establishment Clause of the first amendment:

> "[W]hat are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution." *Schempp,* supra, at 222, 83 S.Ct. at 1571.

The *Cornwell* court was convinced that the

> " * * * purpose and primary effect of the bylaw here is not to establish any particular religious dogma or precept, and that the bylaw does not directly or substantially involve the state in religious exercises or in the favoring of religion or any particular religion." *Cornwell,* supra, at 344.

In the case at bar, the offending material is peripheral to the matter of religion. Science and religion necessarily deal with many of the same questions, and they may frequently provide conflicting answers. But, as the Supreme Court wrote twenty years ago, it is not the business of government to suppress real or imagined attacks upon a particular religious doctrine. Burstyn v. Wilson, 343 U.S. 495, 505, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). Teachers of science in the public schools should not be expected to avoid the discussion of every scientific issue on which some religion claims expertise.

Avoidance of any reference to the subject of human origins is, indeed, a decidedly totalitarian approach to the problem presented here. Book-burning is always dangerous, but never more dangerous than when practiced on behalf of young and impressionable minds. How is the teacher to respond to the inquiry of a high school biology student regarding the theory of evolution? Is he to be told that the subject is taboo, that the teacher is not permitted to speak of it, that he mustn't ask such questions?

Plaintiffs, however, would propose another approach that, at first glance, seems reasonable and fair: "equal time" for all theories regarding human origins.[6] If the beliefs of fundamentalism were the sole alternative to the Darwinian theory, such a remedy might at least be feasible. But virtually every religion known to man holds its own peculiar view of human origins. Within the scientific community itself, there is much debate over the details of the theory of evolution. This Court is hardly qualified to select from among the available theories those which merit attention in a public school biology class. Nor have Plaintiffs suggested to the Court what standards might be applied in making such a selection.

Plaintiffs' case must ultimately fail, then, because the proposed solutions are more onerous than the problem they purport to alleviate. For this Court to require the District to keep silent on the subject of evolution is to do that which the Supreme Court has declared the Arkansas legislature is powerless to do. To insist upon the presentation of all theories of human origins is, on the other hand, to prescribe a remedy that is impractical, unworkable and ineffective.

The State Board of Education, as one of the Defendants in this action, has suggested that Plaintiffs may be assisted by taking advantage of the provisions of § 21.104 of the Texas Education Code, V.T.C.A., which permits any child to be exempted, without penalty, from receiving instruction in certain areas of physiology and hygiene, upon the presentation of a signed statement from his parent or guardian that the material

---

6. If this approach were applied in other areas, teachers might be obliged to provide equal time for an exposition of the Mormon belief in the inequality of the races, and for indoctrination in the Christian Science view of health and disease.

conflicts with the family's religious beliefs.[7] Defendants maintain that § 21.104 is broad enough to encompass Plaintiffs' objections to the teaching of the theory of evolution.

Plaintiffs assert, however, that reliance on § 21.104 is misplaced, because the requirement of a signed statement compels a student "to profess a belief" in a religion, contrary to the Supreme Court's decision in Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961). Torcaso, however, dealt with a provision of the Maryland Constitution which required declaration of a belief in the existence of God as a qualification for holding public office. The State contended that the Maryland Court of Appeals, in upholding the qualification, had been acting on the authority of Zorach v. Clauson, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1951). Zorach had upheld the validity of a New York City "released time" program which permitted interested students to attend religious courses operated outside the school building by various religious groups, with all other students remaining in the classroom. The Supreme Court, in Torcaso took care to distinguish Zorach and to express the view that, to whatever extent that case had breached the wall separating church and state, it had not

"* * * open[ed] the way for government, state or federal, to restore the historically and constitutionally discredited policy of probing religious beliefs by test oaths * * *. Torcaso, supra, 367 U.S. at 494, 81 S.Ct. at 1683.

The Supreme Court, presented in Torcaso with an opportunity to impose a narrowly restricted reading upon its de-

cision in Zorach, declined to do so. And Zorach, thus affirmed, provides the answer to Plaintiffs' discomfort with the alternative of § 21.104:

"It takes obtuse reasoning to inject any issue of the 'free exercise' of religion into the present case. No one is forced to go to the religious classroom and no religious exercise or instruction is brought to the classrooms of the public schools. A student need not take religious instruction. He is left to his own desires as to the manner or time of his religious devotions, if any." Zorach, supra, 343 U.S. at 311, 72 S.Ct. at 682.

Plaintiffs in the case at bar are attempting to have it both ways. On the one hand, they argue that they are forced to submit to teachings which deeply offend their religious beliefs. And yet they reject the option of leaving the classroom during the presentation of the offending material, contending that their exit under such circumstances is equivalent to the coerced expression of religious belief. For that matter, the mere filing of the present civil action puts Plaintiffs on record as holding certain religious views. But the fundamental difference between the compulsion of a test oath and that of a "released time" program, or that underlying § 21.104 is simply too great to ignore.

The Court thus finds that, under the facts pleaded, each of Plaintiffs' contentions regarding the teaching of the theory of evolution in the Houston public schools—that it inhibits Plaintiffs in the free exercise of their religion and that it constitutes an establishment of religion—fails to state a claim upon which relief can be granted. Although they have made no effort to develop the

---

7. § 21.104 reads as follows:

"All textbooks on physiology and hygiene purchased in the future for use in the public schools of this State shall include at least one chapter on the effects of alcohol and narcotics. Although physiology and hygiene must be taught in all public schools, any child may be exempted, without penalty, from receiving instruction therein if his parent or guardian presents to the school principal a signed statement that the teaching of disease, its symptoms, development and treatment, and the viewing of pictures or motion pictures on such subjects conflict with the religious teachings of a well-established church or denomination to which the parent or guardian and the child belong."

issue, Plaintiffs have also asserted that the teaching of the theory of evolution denies to them the equal protection of the laws, in contravention of the fourteenth amendment. Since Plaintiffs have failed to indicate the manner in which they have been denied the equal protection of the laws, the Court will merely note that Defendants' presentation of the theory of evolution seems to apply equally to all students. Thus, it appears that Plaintiffs' equal protection contention also fails to state a claim upon which relief can be granted.

Accordingly, Defendants' motion to dismiss for failure to state a claim is granted and this cause of action is hereby dismissed.