Honorable Oscar H. Mauzy Chairman Committee on Jurisprudence Texas State Senate P.O. Box 12068, Capitol Station Austin, Texas 78711
Re: Whether certain rules of the State Board of Education concerning the treatment of the subject of evolution in textbooks violate the Establishment Clause of the United States Constitution
Dear Senator Mauzy:
You have asked whether certain rules of the State Board of Education violate the federal constitutional prohibition against laws "respecting an establishment of religion." U.S. Const. amends. 1, 14. These rules, issued on September 29, 1983, and effective from October 24, 1983, provide:
 (a) All adopted textbooks shall meet the following content requirements and limitations:
 (1) In accordance with the Texas Education Code § 12.14(c), textbooks shall contain no material of a partisan or sectarian character.
 (5) Textbooks that treat the theory of evolution shall identify it as only one of several explanations of the origins of humankind and avoid limiting young people in their search for meanings of their human existence.
 (A) Textbooks presented for adoption which treat the subject of evolution substantively in explaining the historical origins of man shall be edited, if necessary, to clarify that the treatment is theoretical rather than factually verifiable. Furthermore, each textbook must carry a statement on an introductory page that any material on evolution included in the book is clearly presented as theory rather than verified.
 (B) Textbooks presented for adoption which do not treat evolution substantively as an instructional topic, but make reference to evolution indirectly or by implication, must be modified, if necessary, to ensure that the reference is clearly to a theory and not to a verified fact. These books will not need to carry a statement on the introductory page.
 (C) The presentation of the theory of evolution shall be done in a manner which is not detrimental to other theories of origin.
8 Tex.Reg. 3988.
In Epperson v. Arkansas, 393 U.S. 97 (1968), the United States Supreme Court struck down an Arkansas statute that forbade the teaching of evolution. More recently, a federal district court invalidated an Arkansas statute which required public schools to "give balanced treatment to creation-science and to evolution-science." McLean v. Arkansas Board of Education,529 F. Supp. 1255, 1256 (E.D.Ark. 1982). Although the stated purpose of this statute was to provide a "balanced" treatment of the teaching of evolution, the court found it necessary to look behind this stated purpose to consider the historical context of the statute, the specific sequence of events leading up to its passage, and contemporaneous statements of the legislative sponsor. 529 F. Supp. at 1263-64. Examining these circumstances, the court was unable to avoid the conclusion that the statute "was passed with the specific purpose by the General Assembly of advancing religion," and thus failed the first prong of the Supreme Court's test, that of a secular legislative purpose.529 F. Supp. at 1264.
The rule under consideration here represents a slight modification of a 1974 state board rule which in turn derived from a still earlier version. At hearings conducted before the board in both 1974 and 1983, the board heard testimony from proponents of both evolution and creationism, and it is necessary to consider the kind of controversy which was before the board in both instances. In 1983, the board heard testimony from five groups and 17 individuals. See 8 Tex.Reg., (October 7, 1983), at 3986-87.
Under the federal Constitution, laws suspected of violating the Establishment Clause of the first amendment are subjected to a three-pronged test formulated by the Supreme Court in Lemon v. Kurtzman, 403 U.S. 602 (1971), and later applied in Stone v. Graham, 449 U.S. 39 (1980): Laws must have a secular purpose; they must neither advance nor hinder religion in their primary effect; and they must not foster excessive government entanglement with religion. If a statute, or a rule promulgated pursuant to a statute, violates any of these principles, it must be struck down under the Establishment Clause. See Stone v. Graham, supra. In our opinion, the board's rules on their face fail to satisfy at least the first prong of the Lemon test, in that they fail to demonstrate a secular purpose. Although, like the statute at issue in McLean, see 529 F. Supp. at 1272, the board's rule prohibits any "material of a partisan or sectarian character," we believe that subsequent provisions belie that statement.
The only aspect of "evolution" with which the rule is concerned is that which relates to "the historical origins of man." The rule requires a biology textbook, for example, to carry a disclaimer on its introductory page to the effect that "any material on evolution" included therein is to be regarded as theory rather than as factually verifiable. In the first place, such a disclaimer — which might make sense if applied to all scientific theories — is limited to one aspect — man's origins — of one theory — evolution — of one science — biology. In the context of the controversy between evolutionists and creationists which was before the board at the time of the rules' adoption both in 1974 and 1983, this singling out of one aspect of one theory of one science can be explained only as a response to pressure from creationists.
In the second place, the "theory of evolution," as it is commonly treated in biology texts, is a comprehensive explanation of the development of the various plant and animal species. Only a relatively minor portion is concerned with the "historical origins of man." The latter subject is the primary interest of creationists. See McLean, supra, at 1260. Again, the inference is inescapable from the narrowness of the requirement that a concern for religious sensibilities, rather than a dedication to scientific truth, was the real motivation for the rules.
Finally, the rules require that a textbook identify the theory of evolution "as only one of several explanations" of human origins in order to "avoid limiting young people in their search for meanings of their human existence." (Emphasis added). Such language is not conducive to an explanation that the purpose of the rule is to insure that impressionable minds will be able to distinguish between scientific theory and dogma. The "meaning of human existence" is not the stuff of science but rather, the province of philosophy and religion. By its injection into the rules language which is clearly outside the scope of science, the board has revealed the non-secular purpose of its rules.
Clearly, the board made an effort, as it has stated, to "insure neutrality in the treatment of subjects upon which beliefs and viewpoints differ dramatically." In our opinion, however, the board, in its desire not to offend any religious group, has injected religious considerations into an area which must be, at least in the public school context, strictly the province of science. As the court said in Wright v. Houston Independent School District, 366 F. Supp. 1208, 1211 (S.D.Tex. 1972):
 Science and religion necessarily deal with many of the same questions, and they may frequently provide conflicting answers. But, as the Supreme Court wrote twenty years ago, it is not the business of government to suppress real or imagined attacks upon a particular religious doctrine. Burstyn v. Willson, 343 U.S. 495, 505, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). Teachers of science in the public schools should not be expected to avoid the discussion of every scientific issue on which some religion claims expertise. (Emphasis added).
If the board feels compelled to legislate in this area, it should, in order to avoid the constitutional prohibition, promulgate a rule which is of general application to all scientific inquiry, which does not single out for its requirement of a disclaimer a single theory of one scientific field, and which does not include language suggesting inquiries which lie totally outside the realm of science. The rules submitted, however, when considered in the context of the circumstances of their adoption, fail to evidence a secular purpose, and hence we believe a court would find that they contravene the first andfourteenth amendments to the United States Constitution.
 SUMMARY
The rules of the State Board of Education, concerning the subject of evolution, fail to demonstrate a secular purpose and are therefore in contravention of the first and fourteenth amendments to the United States Constitution.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Tom Green First Assistant Attorney General
 David R. Richards Executive Assistant Attorney General
 Prepared by Rick Gilpin Assistant Attorney General