

# The Attorney General of Texas

March 12, 1984

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Oscar H. Mauzy
Chairman
Committee on Jurisprudence
Texas State Senate
P. O. Box 12068, Capitol Station
Austin, Texas    78711

Opinion No. JM-134

Re:  Whether certain rules of
the  State  Board  of  Education
concerning the treatment of the
subject  of  evolution  in  text-
books violate the Establishment
Clause  of  the  United  States
Constitution

Dear Senator Mauzy:

You  have  asked  whether  certain  rules  of  the  State  Board  of
Education  violate  the  federal  constitutional  prohibition  against  laws
"respecting an establishment of religion."  U.S. Const. amends. 1, 14.
These rules, issued on September 29, 1983, and effective from October
24, 1983, provide:

> (a)  All  adopted  textbooks  shall  meet  the
> following content requirements and limitations:
>
> (1)    In accordance with the Texas Education
> Code §12.14(c), textbooks shall contain
> no material of a partisan or sectarian
> character.
>
> . . . .
>
> (5)    Textbooks  that  treat  the  theory  of
> evolution shall identify it as only one
> of several explanations of the origins of
> humankind and avoid limiting young people
> in their search for meanings of their
> human existence.
>
> (A)    Textbooks  presented  for  adoption  which
> treat    the    subject    of    evolution
> substantively    in    explaining    the
> historical  origins  of  man  shall  be
> edited, if necessary, to clarify that the
> treatment  is  theoretical  rather  than
> factually verifiable.  Furthermore, each
> textbook  must  carry  a  statement  on  an

introductory page that any material on evolution included in the book is clearly presented as theory rather than verified.

(B)   Textbooks presented for adoption which do not treat evolution substantively as an instructional topic, but make reference to evolution indirectly or by implication, must be modified, if necessary, to ensure that the reference is clearly to a theory and not to a verified fact.  These books will not need to carry a statement on the introductory page.

(C)   The presentation of the theory of evolution shall be done in a manner which is not detrimental to other theories of origin.

8 Tex. Reg. 3988.

In Epperson v. Arkansas, 393 U.S. 97 (1968), the United States Supreme Court struck down an Arkansas statute that forbade the teaching of evolution.  More recently, a federal district court invalidated an Arkansas statute which required public schools to "give balanced treatment to creation-science and to evolution-science." McLean v. Arkansas Board of Education, 529 F.Supp. 1255, 1256 (E.D. Ark. 1982).  Although the stated purpose of this statute was to provide a "balanced" treatment of the teaching of evolution, the court found it necessary to look behind this stated purpose to consider the historical context of the statute, the specific sequence of events leading up to its passage, and contemporaneous statements of the legislative sponsor.  529 F.Supp. at 1263-64.  Examining these circumstances, the court was unable to avoid the conclusion that the statute "was passed with the specific purpose by the General Assembly of advancing religion," and thus failed the first prong of the Supreme Court's test, that of a secular legislative purpose.  529 F.Supp. at 1264.

The rule under consideration here represents a slight modification of a 1974 state board rule which in turn derived from a still earlier version.  At hearings conducted before the board in both 1974 and 1983, the board heard testimony from proponents of both evolution and creationism, and it is necessary to consider the kind of controversy which was before the board in both instances.  In 1983, the board heard testimony from five groups and 17 individuals.  See 8 Tex. Reg., (October 7, 1983), at 3986-87.

Under the federal Constitution, laws suspected of violating the Establishment Clause of the first amendment are subjected to a

three-pronged test formulated by the Supreme Court in Lemon v. Kurtzman, 403 U.S. 602 (1971), and later applied in Stone v. Graham, 449 U.S. 39 (1980): Laws must have a secular purpose; they must neither advance nor hinder religion in their primary effect; and they must not foster excessive government entanglement with religion. If a statute, or a rule promulgated pursuant to a statute, violates any of these principles, it must be struck down under the Establishment Clause. See Stone v. Graham, supra. In our opinion, the board's rules on their face fail to satisfy at least the first prong of the Lemon test, in that they fail to demonstrate a secular purpose. Although, like the statute at issue in McLean, see 529 F.Supp. at 1272, the board's rule prohibits any "material of a partisan or sectarian character," we believe that subsequent provisions belie that statement.

The only aspect of "evolution" with which the rule is concerned is that which relates to "the historical origins of man." The rule requires a biology textbook, for example, to carry a disclaimer on its introductory page to the effect that "any material on evolution" included therein is to be regarded as theory rather than as factually verifiable. In the first place, such a disclaimer -- which might make sense if applied to all scientific theories -- is limited to one aspect -- man's origins -- of one theory -- evolution -- of one science -- biology. In the context of the controversy between evolutionists and creationists which was before the board at the time of the rules' adoption both in 1974 and 1983, this singling out of one aspect of one theory of one science can be explained only as a response to pressure from creationists.

In the second place, the "theory of evolution," as it is commonly treated in biology texts, is a comprehensive explanation of the development of the various plant and animal species. Only a relatively minor portion is concerned with the "historical origins of man." The latter subject is the primary interest of creationists. See McLean, supra, at 1260. Again, the inference is inescapable from the narrowness of the requirement that a concern for religious sensibilities, rather than a dedication to scientific truth, was the real motivation for the rules.

Finally, the rules require that a textbook identify the theory of evolution "as only one of several explanations" of human origins in order to "avoid limiting young people in their search for meanings of their human existence." (Emphasis added). Such language is not conducive to an explanation that the purpose of the rule is to insure that impressionable minds will be able to distinguish between scientific theory and dogma. The "meaning of human existence" is not the stuff of science but rather, the province of philosophy and religion. By its injection into the rules language which is clearly outside the scope of science, the board has revealed the non-secular purpose of its rules.

Clearly, the board made an effort, as it has stated, to "insure neutrality in the treatment of subjects upon which beliefs and viewpoints differ dramatically." In our opinion, however, the board, in its desire not to offend any religious group, has injected religious considerations into an area which must be, at least in the public school context, strictly the province of science. As the court said in Wright v. Houston Independent School District, 366 F.Supp. 1208, 1211 (S.D. Tex. 1972):

> Science and religion necessarily deal with many of the same questions, and they may frequently provide conflicting answers. But, as the Supreme Court wrote twenty years ago, it is not the business of government to suppress real or imagined attacks upon a particular religious doctrine. Burstyn v. Willson, 343 U.S. 495, 505, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). Teachers of science in the public schools should not be expected to avoid the discussion of every scientific issue on which some religion claims expertise. (Emphasis added).

If the board feels compelled to legislate in this area, it should, in order to avoid the constitutional prohibition, promulgate a rule which is of general application to all scientific inquiry, which does not single out for its requirement of a disclaimer a single theory of one scientific field, and which does not include language suggesting inquiries which lie totally outside the realm of science. The rules submitted, however, when considered in the context of the circumstances of their adoption, fail to evidence a secular purpose, and hence we believe a court would find that they contravene the first and fourteenth amendments to the United States Constitution.

## S U M M A R Y

The rules of the State Board of Education, concerning the subject of evolution, fail to demonstrate a secular purpose and are therefore in contravention of the first and fourteenth amendments to the United States Constitution.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton