Don AGUILLARD, et al.

v.

David C. TREEN, Governor, et al.

Civ. A. No. 84–4787.

United States District Court,
E.D. Louisiana.

Jan. 10, 1985.

Andrew M. Weltchek, New Orleans, La., for plaintiffs.

Patricia Nalley Bowers, New Orleans, La., for defendants.

## REASONS FOR JUDGMENT

DUPLANTIER, District Judge.

At its 1981 regular session, the Louisiana Legislature added a new sub-part to Louisiana's "General School Law," applicable to all public secondary and elementary schools, entitled "BALANCED TREATMENT FOR CREATION-SCIENCE AND EVOLUTION-SCIENCE IN PUBLIC SCHOOL INSTRUCTION." The statute is reproduced in full in the addendum. It requires Louisiana public schools to "give balanced treatment to creation-science and to evolution-science;" "[b]alanced treatment of these two models shall be given in classroom lectures ..., and in other educational programs in public schools, to the extent that such lectures, textbooks, library materials, or educational programs deal in any way with the subject of the origin of man, life, the earth, or the universe." Creation-science and evolution-science are separately defined in identical language as "the scientific evidences for creation (evolution) and inferences from those scientific evidences." "Balanced treatment" requires that each school provide "whatever information and instruction in both creation and evolution models a class-

room teacher determines is necessary and appropriate to provide insight into both theories." No school is required to give any instruction in the "subject of origin," but if a school chooses to teach about either evolution-science or creation-science, it must teach both, and it must give each balanced treatment. The statute prohibits discrimination against any teacher "who chooses to be a creation-scientist or to teach scientific data which points to creationism."[1]

A number of plaintiffs, including parents of Louisiana public school students, as well as educators, taxpayers, and religious leaders, seek to enjoin implementation of the "Balanced Treatment" statute as a violation of the First Amendment's Establishment Clause. Defendants, Louisiana officials charged with the duty of implementation of the statute, have agreed to take no action toward implementation pending the final outcome of this litigation.[2]

Plaintiffs moved for summary judgment, contending that there is no genuine issue as to any material fact and that as a matter of law the statute violates the Establishment Clause as interpreted by the United States Supreme Court and the Fifth Circuit Court of Appeals.

There is no doubt that the defendants could produce a great deal of evidence on collateral issues, as did the proponents of a similar Arkansas statute during ten days of a federal court trial which resulted in a declaration of unconstitutionality. *McLean vs. Arkansas Board of Education*, 529 F.Supp. 1255 (E.D.Ark.1982). Indeed, in opposition to the summary judgment motion defendants have filed well over one thousand pages of memoranda and summaries thereof and affidavits, all dedicated

primarily to a discussion of the anticipated silence.

We are convinced that whatever that evidence would be, it could not affect the outcome. We decline to put the people of Louisiana to the very considerable needless expense (including fees of attorneys on both sides) of a protracted trial. We hold that the case is ripe for summary judgment. Bound as we are by the Constitution as interpreted by the Supreme Court and the Fifth Circuit Court of Appeals, we declare Act 685 of the 1981 Regular Session of the Louisiana Legislature to be unconstitutional and enjoin its implementation.

Both sides seek comfort from recorded statements of proponents and opponents, from various committee hearings, from drafts of earlier proposals and bills, and from amendments to the original bill before it was finally enacted. The plaintiffs maintain that all of this "history" points to a religious purpose for and effect of the statute; with equal (and much lengthier) fervor, defendants contend the opposite: the history shows that religion is not involved. All of this "history" is of little or no effect. The statute is not ambiguous; it means what it says.

Defendants contend that summary judgment is precluded by the presence of at least one genuine issue of material fact, the definition of "science." We decline the invitation to judge that debate. Whatever "science" may be, "creation," as the term is used in the statute, involves religion, and the teaching of "creation-science" and "creationism," as contemplated by the statute, involves teaching "tailored to the principles" of a particular religious sect or group of sects. *Epperson v. Arkansas*, 393 U.S.

---

1. No mention is made of discrimination against teachers of evolution.

2. Earlier, this court held that the statute violated the state constitutional grant of authority over the public school system to the Board of Elementary and Secondary Education. We suggested that that issue should be certified by the Fifth Circuit to the Louisiana Supreme Court for its decision before any federal court intervention on First Amendment grounds. Defend-

ants appealed, and the Fifth Circuit Court of Appeals certified the question to the Louisiana Supreme Court. *Aguillard v. Treen*, No. 82–3778 (March 14, 1983). In a 4–3 decision, the Louisiana Supreme Court held that the statute did not violate the Louisiana Constitution. *Aguillard v. Treen*, 440 So.2d 704 (La.1983). The Fifth Circuit then remanded for this court to consider the First Amendment challenge.

97, 106, 89 S.Ct. 266, 271, 21 L.Ed.2d 228 (1968). As it is ordinarily understood, the term "creation" means the bringing into existence of mankind and of the universe and implies a divine creator. While all religions may not teach the existence of a supreme being, a belief in a supreme being (a creator) is generally considered to be a religious tenet.

▋ The state may not constitutionally prohibit the teaching of evolution in the public schools, for there can be no non-religious reason for such a prohibition. The First Amendment "forbids alike the preference of a religious doctrine or the prohibition of theory which is deemed antagonistic to a particular dogma." *Id.* at 106–107, 89 S.Ct. at 271–72. If the state cannot prohibit the teaching of evolution, manifestly it cannot provide that evolution can be taught only if the evolution curriculum is "balanced" with a curriculum involving tenets of a particular religious sect. *See Wright v. Houston Independent School District,* 366 F.Supp. 1208 (S.D.Tex., Houston Division 1972), *aff'd,* 486 F.2d 137 (5th Cir. 1973).

▋ Because the statute requires the teaching of creation-science if a school teaches a subject the teaching of which the state cannot constitutionally prohibit, we treat the statute as if it simply mandates the teaching of creation-science. Just as the sole reason why the Arkansas legislature prohibited the teaching of evolution was that it is deemed to conflict with a particular religious doctrine (*Epperson, supra* ), so too the sole reason why the Louisiana legislature would require the teaching of creationism is that it comports with the same religious doctrine. There can be no legitimate secular reason for the "Balanced-Treatment for Creation-Science and Evolution-Science Act."

We are mindful, of course, that the issue is not whether the statute is meritorious, or whether it enjoys popular support. We are also mindful that any act passed by the state legislature is presumed to be constitutional, and that a court should declare a statute which is not self-implementing fa-cially unconstitutional only if under no circumstances can it be applied in a constitutional manner. *See Gitlow v. New York,* 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925); *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). We have carefully considered whether the Louisiana public school system could implement the "Balanced-Treatment Act" in a manner that would not offend the Establishment Clause. We conclude that it could not do so.

Arguably, a public school curriculum could give balanced treatment to evolution and creationism without advocating the latter. A study of the Bible for its literary and historic qualities only would not involve advocacy of its content. A study of comparative religion or history of religion could be conducted without advocating the beliefs of any particular religious sect. Curricula such as those would be constitutional. (*See School District of Abington Township, Pennsylvania v. Schempp,* 374 U.S. 203, 225, 83 S.Ct. 1560, 1573, 10 L.Ed.2d 844 (1963)). However, it is clear that the statute under consideration does not contemplate mere objective exposure of the creationism concept as part of a secular program designed to educate students concerning various theories of the origin of man and the universe.

In considering whether the "Balanced Treatment Act" violates the Establishment Clause of the First Amendment, we make the same acknowledgment as did the Supreme Court in the oft-cited *Lemon* opinion: "Candor compels acknowledgment ... that we can only dimly perceive the lines of demarcation in this extraordinarily sensitive area of constitutional law." *Lemon v. Kurtzman,* 403 U.S. 602 at 612, 91 S.Ct. 2105 at 2111, 29 L.Ed.2d 745 (1971). The following three-part test is applied in *Lemon:*

First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion ...; finally, the statute must not foster "an

excessive government entanglement with religion." *Id.* at 612–13, 91 S.Ct. at 2111. The Court has not, however, adhered rigidly to the *Lemon* test. We quote from the recent nativity-scene opinion: "[W]e have repeatedly emphasized our unwillingness to be confined to any single test or criterion in this sensitive area." *Lynch v. Donnelly,* 465 U.S. 668, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984). Another view is that the First Amendment does not prohibit governmental activity of a religious nature so long as the activity is neutral to all religions.[3] One conclusion seems clear: the meaning of the First Amendment is not set in constitutional stone.

■ Whether one applies the "three-pronged" test of *Lemon,* the less rigid analysis of *Lynch,* or the views of those who contend that the First Amendment does not prohibit neutral state activity of a religious nature, the Louisiana statue violates the establishment clause. Because it promotes the beliefs of some theistic sects to the detriment of others, the statute violates the fundamental First Amendment principle that a state must be neutral in its treatment of religions. The First Amendment, as applied to the state by the Fourteenth,[4] provides that the state "shall make no law respecting an establishment of religion." "The Balanced Treatment for Creation-Science and Evolution-Science in Public School Instruction Act" is a "law respecting an establishment of religion."

## ADDENDUM

### SUBPART D–2. BALANCED TREATMENT FOR CREATION-SCIENCE AND EVOLUTION-SCIENCE IN PUBLIC SCHOOL INSTRUCTION

§ 286.1.  Short title

This Subpart shall be known as the "Balanced Treatment for Creation-Science and Evolution-Science Act."

Added by Acts 1981.  No. 685, § 1.

**3.** "[T]he Constitution guarantees freedom *of* religion, but should not be construed to guarantee freedom *from* religion." Unpublished Reasons for Judgment of this court, reversed by a divided panel of the Fifth Circuit, *Karen B. et al v. Treen,* et al No. 80–4774 (E.D.La. January 8,

**History and Source of Law**

**Title of Act:**

An Act to amend Part III of Chapter I of Title 17 of the Louisiana Revised Statutes of 1950 by adding thereto a new Sub-Part, to be designated as Sub-Part D–2 thereof, comprised of Sections 286.1 through 286.7, both inclusive, relative to balanced treatment of creation-science and evolution-science in public schools, to require such balanced treatment, to bar discrimination on the basis of creationist or evolutionist belief, to provide definitions and clarifications, to declare the legislative purpose, to provide relative to inservice teacher training and materials acquisition, to provide relative to curriculum development, and otherwise to provide with respect thereto. Acts 1981, No. 685.

§ 286.2.  Purpose

This Subpart is enacted for the purposes of protecting academic freedom.

Added by Acts 1981, No. 685. § 1.

§ 286.3.  Definitions

As used in this Subpart, unless otherwise clearly indicated, these terms have the following meanings:

(1) "Balanced treatment" means providing whatever information and instruction in both creation and evolution models the classroom teacher determines is necessary and appropriate to provide insight into both theories in view of the textbooks and other instructional materials available for use in his classroom.

(2) "Creation-science" means the scientific evidences for creation and inferences from those scientific evidences.

(3) "Evolution-science" means the scientific evidences for evolution and inferences from those scientific evidences.

1981), *rev'd* 653 F.2d 897 (5th Cir.1981) (emphasis in original).

**4.** *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

(4) "Public schools" mean public secondary and elementary schools.

Added by Acts 1981. No. 685. § 1.

### § 286.4. Authorization for balanced treatment; requirement for nondiscrimination

A. Commencing with the 1982–1983 school year, public schools within this state shall give balanced treatment to creation-science and to evolution-science. Balanced treatment of these two models shall be given in classroom lectures taken as a whole for each course, in textbook materials taken as a whole for each course, in library materials taken as a whole for the sciences and taken as a whole for the humanities, and in other educational programs in public schools, to the extent that such lectures, textbooks, library materials, or educational programs deal in any way with the subject of the origin of man, life, the earth, or the universe. When creation or evolution is taught, each shall be taught as a theory, rather than as proven scientific fact.

B. "Public schools within this state and their personnel shall not discriminate by reducing a grade of a student or by singling out and publicly criticizing any student who demonstrates a satisfactory understanding of both evolution-science or creation-science and who accepts or rejects either model in whole or part.

C. No teacher in public elementary or secondary school or instructor in any state-supported university in Louisiana, who chooses to be a creation-scientist or to teach scientific data which points to creationism shall, for that reason, be discriminated against in any way by any school board, college board, or administrator.

Added by Acts 1981, No. 685, § 1.

### § 286.5. Clarifications

This Subpart does not require any instruction in the subject of origins but simply permits instruction in both scientific models (of evolution-science and creation-science) if public schools choose to teach either. This Subpart does not require each individual textbook or library book to give balanced treatment to the models of evolution-science and creation-science; it does not require any school books to be discarded. This Subpart does not require each individual classroom lecture in a course to give such balanced treatment but simply permits the lectures as a whole to give balanced treatment; it permits some lectures to present evolution-science and other lectures to present creation-science.

Added by Acts 1981; No. 685. § 1.

### § 286.6. Funding of inservice training and materials acquisition

Any public school that elects to present any model of origins shall use existing teacher inservice training funds to prepare teachers of public school courses presenting any model of origins to give balanced treatment to the creation-science model and the evolution-science model. Existing library acquisition funds shall be used to purchase nonreligious library books as are necessary to give balanced treatment to the creation-science model and the evolution-science model.

Added by Acts 1981, No. 685, § 1.

### § 286.7. Curriculum development

A. Each city and parish school board shall develop and provide to each public school classroom teacher in the system a curriculum guide on presentation of creation-science.

B. The governor shall designate seven creation-scientists who shall provide resource services in the development of curriculum guides to any city or parish school board upon request. Each such creation-scientist shall be designated from among the full-time faculty members teaching in any college and university in Louisiana. These creation-scientists shall serve at the pleasure of the governor and without compensation.

Added by Acts 1981, No. 685, § 1.