636 F.2d 738
 205 U.S.App.D.C. 30
 Dale CROWLEY, Jr., Individually & in his capacity as
Executive Director of the National Foundation for
Fairness in Education, et al., Appellants,
v.
SMITHSONIAN INSTITUTION et al.
 No. 79-1193.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 8, 1980.
Decided Oct. 30, 1980.
 
 1
 Appeal from the United States District Court for the District of Columbia (D.C. Civil Action No. 78-0641).
 
 
 2
 David C. Gibbs, Jr., Cleveland, Ohio, a member of the bar of the Supreme Court of Ohio, pro hac vice, by special leave of court, with whom George R. Douglas, Jr., Washington, D. C., was on brief, for appellants.
 
 
 3
 Mark J. Biros, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, U. S. Atty., at the time the brief was filed, John A. Terry and William H. Briggs, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellees. Regina C. McGranery, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellees.
 
 
 4
 Before TAMM and MacKINNON, Circuit Judges, and LOUIS F. OBERDORFER,* U. S. District Judge for the District of Columbia.
 
 
 5
 Opinion for the court filed by District Judge OBERDORFER.
 
 OBERDORFER, District Judge:
 
 6
 Appellants are an individual and two organizations, the National Foundation for Fairness in Education and National Bible Knowledge, Inc. They refer to their conception of the origin of life as "scientific creationism." They assert that by marshalling and interpreting data in a scientific way, they can support the proposition that human and other forms of life were brought into existence in completed form, all at one time, by a Creator.[1] They conscientiously disagree with the theory of evolution which postulates that all plant, animal, and human life "have arisen from a single source which itself came from an inorganic form."[2]
 
 
 7
 Appellees are the Smithsonian Institution and two Smithsonian employees. Using federal funds, appellees planned (for 1979) and conducted (in 1978) two exhibitions containing references to evolution at the Smithsonian's Museum of Natural History (Museum). The exhibit presented at the Museum in 1978 was entitled "The Emergence of Man." The one planned for (and presumably completed in) 1979, contemplated using specimens from the Museum's collection to dramatize the diversity of life on Earth, the adaptation of plant and animal life to their environments, and the way in which organisms change over time in response to environmental and other influences.
 
 
 8
 Appellants sued in the United States District Court for the District of Columbia for a declaratory judgment that the Smithsonian's charter (20 U.S.C. § 41 et seq.) did not authorize the use of federal funds for such exhibits and that, if the charter did authorize such use of federal funds, the charter and the expenditures violated the first amendment's prohibition against the establishment of religion and inhibited appellants' free exercise of their religion. Appellants urged that by explaining and advocating the theory of evolution, appellees unconstitutionally supported the religion of Secular Humanism.[3] Appellants sought an injunction prohibiting the exhibits and federal funding of them or, in the alternative, an order requiring appellees to commit equal funds to explain creation along the lines of the Biblical account in Genesis.
 
 
 9
 Appellees moved in the District Court for dismissal or, in the alternative, for summary judgment on the grounds that (1) appellants lacked standing to challenge the statutory authority of the appellees,[4] (2) appellants constitutional argument was foreclosed by Supreme Court decisions authorizing public schools to teach evolution, (3) the evolution exhibits were essentially secular, did not primarily affect or advance religion nor excessively entangle government in it, and (4) the relief sought by appellants would itself violate the establishment clause.
 
 
 10
 Appellants opposed summary judgment as inappropriate. They disputed whether the exhibits were religious or secular, and whether evolution itself is a scientific theory in light of the fact that it cannot be proven in a laboratory. The District Court refused to accept appellants' description of evolution "as, and only as, part of the religion of secular humanism." Crowley v. Smithsonian Institution, 462 F.Supp. 725, 726 (D.D.C.1978). The District Court also noted that appellees do not themselves treat evolution as a religious matter nor have they explicitly expressed any hostility to religious theories of creation. It concluded from these facts that it could not accept the characterization of these issues as materially factual. Applying, then, the well-established test as it is stated in Tilton v. Richardson, 403 U.S. 672, 678, 91 S.Ct. 2091, 2095, 20 L.Ed.2d 790 (1971), the District Court concluded that (1) appellees' "presentation of evolutionary theory has the solid secular purpose of 'increasing and diffusing knowledge among men' " and that appellees do not "oppose or show hostility to religion" and do not "create a religion of secularism;" 426 F.Supp. at 727, (2) the exhibits neither advance a religious theory nor inhibit appellants in theirs; (3) neither the Smithsonian enabling legislation nor the exhibits involve excessive entanglement with religion; and (4) the appellants' free exercise of their religion is not actionably impaired merely because, should they visit the Smithsonian, they may be confronted with exhibits which are distasteful to their religion.
 
 
 11
 Appellants' appeal focuses specifically on whether there were genuine issues of material fact which precluded decision by summary judgment and whether the District Court viewed the inferences to be drawn from appellants' pleadings and affidavits in a light most favorable to appellants. Appellants claim both that the trial court should not have resolved by summary judgment the question of whether the exhibits were secular in nature as displaying scientific knowledge and that the trial court failed to draw the inferences necessary under the law as to "the religious nature of evolution and the preferred position given this religious belief system by appellees in violation of the First Amendment ...." Appellants' brief at p. 27. Appellees' response basically tracked and supported the trial court's memorandum. Satisfied that there were no material facts in dispute and that the trial court correctly decided the legal issues, we affirm.
 
 I.
 
 12
 The Smithsonian Institution was created by the Act of August 10, 1846, "to increase and diffuse knowledge among men." 20 U.S.C. § 41. The National Museum of Natural History is a bureau of the Smithsonian. The Museum is authorized to receive "all objects of art and of foreign and curious research, and all objects of natural history, plants, and geological and mineralogical specimens belonging to the United States ...." 20 U.S.C. § 50. This authority is governed by and in aid of the overriding charter of the Institution. 20 U.S.C. § 41. According to the uncontradicted affidavit of the Museum director, himself an appellee in this case, the Museum "is considered one of the world's major centers for the study of plants, animals, fossil organisms, terrestrial and extraterrestrial rocks and minerals, and man himself."[5]
 
 
 13
 There has been no dispute about the physical elements of the exhibits in question. The exhibit planned for 1979 was to emphasize specimens from the Museum's collection depicting adaptations of plants and animals to their environment by such devices as camouflage, the overproduction of offspring and other defense mechanisms. It was to include an introductory display of a variety of specimens such as trays of bird eggs, mammal skulls, and jars of amphibians. App. at p. 62. There were also to be displays on genetics, natural selection, and one showing differentiation of populations. App. at pp. 62-78.
 
 
 14
 The 1978 exhibit, the "Emergence of Man," is described in an accompanying pamphlet as "the story of how, when and where modern human beings evolved from homonid ancestors who lived millions of years ago." App. at 52. This exhibit, consisting of data from the natural world, illustrated the physical similarities and differences between man and what were reported to be geneological ancestors.
 
 
 15
 The concept of evolution was referred to in these exhibits. They did not, however, express implicitly or explicitly "that the evolutionary theory of the origin of man and of all plants and animal life is 'the only credible theory of the origin of life.' " Affidavit of Porter M. Kier, Director of the National Museum of Natural History, App. at p. 46. The exhibits did not mention religion in general or Secular Humanism in particular. Neither by their terms nor by implication did the exhibits disparage religion or any religious tenet.
 
 
 16
 Appellants' opposition to the summary judgment motion was essentially a challenge to the concept of evolution. It questioned whether that concept is any more susceptible to scientific proof than appellants' concept of the supernatural origins of life, and characterized this issue as one of material fact. In support of their contentions, they offered the affidavit, among others, of Dr. Richard B. Bliss, Director of Curriculum Development for the Institute of Creation Research of San Diego, California. Dr. Bliss' affidavit characterized evolution as "a nonobservable and alleged phenomenon which can neither be proven nor verified by the scientific method.... (E)volution of life from primal matter is impossible to observe ...." App. at 37. Since the evolution theory cannot be tested by the scientific method, according to Dr. Bliss' opinion, it is not a true science, but is a "faith position." In addition, Dr. Bliss' affidavit stated, from personal observation of the exhibits in question, but without specification, that they contained "false and misleading statements concerning evolution" and that the exhibits are indoctrinating the public in the faith of evolution. App. at page 39. Finally, Dr. Bliss asserted that, in his opinion, evolution itself is a religion and that many evolutionists so acknowledge and "promote" it as such. App. at p. 39.
 
 II.
 
 17
 Assuming, arguendo, that, as asserted in Dr. Bliss' affidavit, the evolution theory cannot be proved "scientifically" in the laboratory and in that sense rests ultimately on "faith," such fact is not material because it would not establish as a matter of law that the exhibits in question establish any religion such as Secular Humanism.
 
 
 18
 The fact that religions involve acceptance of some tenets on faith without scientific proof obviously does not mean that all beliefs and all theories which rest in whole or in part on faith are therefore elements of a religion as that term is used in the first amendment. For example, appellees suggest that the theory of relativity defies absolute laboratory proof. Obviously the constitution would not interdict government development and diffusion of knowledge about relativity even if it were based on some hypotheses which are not susceptible to physically demonstrable proof.
 
 
 19
 Nor does it follow that government involvement in a subject which is also important to practitioners of a religion becomes, therefore, activity in support of religion. For example, birth control and abortion are topics that involve both religious beliefs and general health and welfare concerns. Many religious leaders have vigorously opposed government support of the teaching and practice of birth control and government support, or even toleration, of abortion. Controversy, including litigation, about these subjects has been prolific and spirited. See, e.g., Williams v. Zbaraz, --- U.S. ----, 100 S.Ct. 2694, 65 L.Ed.2d 831 (1980); Civil Awareness of America Ltd. v. Richardson, 343 F.Supp. 1358 (E.D.Wis.1972); Committee to Defend Reproductive Rights v. Myers, 93 Cal.App.3d 492, 156 Cal.Rptr. 73 (1979) (hearing granted). No court, however, has finally held that government advocacy of or opposition to either birth control or abortion violates the establishment clause of the first amendment. Indeed, the Supreme Court recently and summarily rejected an argument that the limiting of medicaid funds for abortions violated the establishment clause "because it incorporates into law the doctrines of the Roman Catholic Church ...." Harris v. McRae, --- U.S. ----, 100 S.Ct. 2671, 2689, 65 L.Ed.2d 784 (1980). The Court reasoned that:
 
 
 20
 Although neither a State nor the Federal Government can constitutionally "pass laws which aid one religion, aid all religions, or prefer one religion over another," Everson v. Board of Education, 330 U.S. 1, 15 (67 S.Ct. 504, 511, 91 L.Ed. 711), it does not follow that a statute violates the Establishment Clause because it "happens to coincide or harmonize with the tenets of some or all religions." McGowan v. Maryland, 366 U.S. 420, 442 (81 S.Ct. 1101, 1113, 6 L.Ed.2d 393).
 
 
 21
 Id. So here, we cannot conclude that the exhibits in question are impermissible because their message may coincide or harmonize with a tenet of Secular Humanism or may be repugnant to creationism.
 
 
 22
 Our resolution of appellants' establishment claim as a matter of law disposes of their procedural contention that the District Court erroneously resolved a material issue of fact short of trial. The dispute about whether the evolution theory was based on scientific proof or on faith is immaterial to the question of whether the Smithsonian exhibits supported establishment of Secular Humanism as a religion. The fact that appellants were able to identify one religious group that espoused evolution as one of its tenets is immaterial. Accordingly, we are satisfied that the District Court did not leave unresolved any material issues of fact.[6]
 
 III.
 
 23
 Although the foregoing discussion furnishes an adequate basis for decision, we briefly address the trial court's disposition of appellants' substantive contentions that (1) the appellees' use of federal funds for the exhibits exceeded their authority under the Act of 1846 and (2) if the expenditures were authorized, the Act and the activity of conducting the exhibits violated the first amendment.
 
 1.
 
 24
 Appellants appear not to press their statutory claim in this appeal. We have nevertheless satisfied ourselves from the plain language of the Act, the record, and from judicial notice of the Smithsonian's varied public activities that the exhibits at issue here were well within the appellees' charter from Congress "to increase and diffuse knowledge among men." The exhibits used the Museum's specimens. They were related to and based upon those specimens. The exhibits were marshalled in an orderly way. They related to various aspects of the theory of evolution. That theory has widely disseminated, responsible, secular endorsement.[7] Accordingly, we affirm the District Court's conclusion that the financing and the display of the exhibits were well within appellants' statutory authority.
 
 2.
 
 25
 Courts should be particularly sensitive to claims by groups that government is involved in their religion either by interfering with it, or by supporting a competing theology. The Supreme Court has mandated "government neutrality between religion and religion, and between religion and non-religion." Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). Government, including its judicial branch, is cautioned not "to require that teaching and learning must be tailored to the principles or prohibitions of any religious sect or dogma." Id. at 106, 89 S.Ct. at 271; see also Everson v. Board of Education, 330 U.S. 1, 15-16, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947). The constitution either by operation of the first amendment or the fourteenth, protects a citizen's right to receive information and to "acquire useful knowledge." See, e.g., Red Lion Broadcasting Co. v. F.C.C., 395 U.S. 367, 389-90, 89 S.Ct. 1794, 1806, 23 L.Ed.2d 371 (1969); Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 1247, 22 L.Ed.2d 542 (1969); Lamont v. Postmaster General, 381 U.S. 301, 306-07, 85 S.Ct. 1493, 1496, 14 L.Ed.2d 398 (1965); Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); Bartels v. Iowa, 262 U.S. 404, 43 S.Ct. 628, 67 L.Ed. 1047 (1923).
 
 
 26
 Application of the Supreme Court's caution to this case necessarily requires a balance between appellants' freedom to practice and propagate their religious beliefs in creation without suffering government competition or interferences and appellees' right to disseminate, and the public's right to receive, knowledge from government, through schools and other institutions such as the Smithsonian. This balance was long ago struck in favor of diffusion of knowledge based on responsible scientific foundations, and against special constitutional protection of religious believers from the competition generated by such knowledge diffusion.
 
 
 27
 Thus, the essential question posed by appellants has been resolved by authoritative decisions permitting public schools to teach the facts and theory of evolution to children who, unlike appellants, are compelled by law to come and look and listen. Such public involvement in evolution was not only permitted by the first amendment, but the Courts have further held that to bar or inhibit such teaching would, under some circumstances, itself violate the establishment clause. See Epperson v. Arkansas, 393 U.S. at 103, 89 S.Ct. at 269; Daniel v. Waters, 515 F.2d 485 (6th Cir. 1975); Wright v. Houston Independent School District, 366 F.Supp. 1208 (S.D.Tex.1972), aff'd, 486 F.2d 137 (5th Cir. 1973), cert. denied sub. nom. Brown v. Houston Independent School District, 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974); Willoughby v. Stever, Civil Action No. 1574-72 (D.D.C.August 25, 1972), aff'd mem., 504 F.2d 271 (D.C.Cir.1974), cert. denied, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975).
 
 
 28
 In view of the foregoing, it is unnecessary to labor and therefore we only note that we approve the District Court's application of the criteria as stated in Tilton v. Richardson, supra. The solid secular purpose of the exhibits is apparent from their context and their elements. They did not materially advance the religious theory of Secular Humanism, or sufficiently impinge upon appellants' practice of theirs to justify interdiction. Except insofar as appellants have themselves entangled religion in the exhibits, there is no religious involvement as that concept is used in Tilton.[8]
 
 
 29
 Accordingly, the decision below is affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976)
 
 
 [1]
 See, e.g., H. Morris, The Scientific Case for Creation (1977), and other works collected in Note, Freedom of Religion and Science Instruction in Public Schools, 87 Yale L.J. 515, 554 n.197 (1978)
 
 
 [2]
 G. Kerkut, Implications of Evolution 157 (1960), cited in Note, supra note 1, at 515 n.2
 
 
 [3]
 The record establishes without contradiction that Secular Humanism advocates, in addition to the theory of evolution, such causes as the right to divorce, birth control, universal education, and a world community. There is no suggestion in the record, however, of any institutional or contractual relationship between appellees and any institution or group espousing Secular Humanism
 
 
 [4]
 We shall, as did the District Court, "assume standing and proceed because the merits (of the statutory challenge) go clearly against the plaintiffs." Crowley v. Smithsonian Institution, 462 F.Supp. 725, 726 (D.D.C.1978)
 
 
 [5]
 Affidavit of Porter M. Kier, Director of the National Museum of Natural History, June 26, 1978, Appendix (App.) at p. 44. According to Dr. Kier, the Museum alone has a staff of over 110 professional scientists who "conduct original research and care for the national collections of some 60 million scientific study specimens. The museum has seven scientific departments anthropology, botany, entomology, invertebrate zoology, paleobiology, mineral sciences and vertebrate zoology."
 
 
 [6]
 See Rule 56(e), Fed.R.Civ.P., that an adverse party to a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."
 
 
 [7]
 For a widely circulated, secular statement about evolution and a selected bibliography on the subject, see Evolution, in 7 Encyclopedia Britannica 7-23 (1974)
 Appellants do not allege or suggest that the theory of evolution was originated by a religious institution or a religious leader. They do not deny that it is the subject matter of active secular research and scholarship. Accordingly, approval of financial support of the exhibits here at issue would not foreclose a conclusion in some other case that government financial support of a theory of the origin of life advocated by religious groups, but with less substantial support from secular research and scholarship, would be impermissible establishment of religion.
 
 
 [8]
 Appellants have, at various stages of this litigation, contended that the exhibits at the Museum have interfered with the free exercise of their religion. This claim has not been pressed vigorously on appeal and we find it to be without merit. In any event, there is no allegation that such financial support has any "coercive effect" upon appellants' "practice of ... religion." Harris v. McRae, supra, 100 S.Ct. at 2690, quoting with approval, Abington School District v. Schempp, 374 U.S. 203, 223, 83 S.Ct. 1560, 1572, 10 L.Ed.2d 844 (1963). Appellants allege no effect on their ability freely to exercise their religion or teach it to their children. See Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Finally, appellants are under no compulsion to go to the Museum. If they choose to do so, they are free to avoid the exhibits which they find offensive and may focus on the other exhibits of which there are many. Compare e.g., West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) with Hamilton v. Regents, 293 U.S. 245, 55 S.Ct. 197, 79 L.Ed. 343 (1934)