**Don AGUILLARD, et al.,**
**Plaintiffs-Appellees,**

v.

**Edwin W. EDWARDS, et al.,**
**Defendants-Appellants.**

**No. 85–3030.**

United States Court of Appeals,
Fifth Circuit.

July 8, 1985.

---

William J. Guste, Jr., Atty. Gen., Patricia Nalley Bowers, Asst. Atty. Gen., Lisa F. Keegan, Staff Atty., New Orleans, La., Wendell R. Bird, Sp. Asst. Atty. Gen., Atlanta, Ga., and A. Morgan Brian, Jr., New Orleans, La., for defendants-appellants.

Samuel I. Rosenberg, New Orleans, La., for Orleans Parish.

John DiGiulio, Baton Rouge, La., for La. State Bd.

Roy K. Burns, Covington, La., for St. Tammany.

Paul, Weiss, Rifkind, Wharton & Garrison, Allan Blumstein, James McLoughlin, Alan Pfeffer and Jack D. Novick, New York City; Andrew M. Weltchek and Ron-

ald L. Wilson, New Orleans, La., for plaintiffs-appellees.

Steven M. Freeman, New York City, for amicus Anti-Defamation League.

Marc D. Storn, New York City, for amicus American Jewish Congress.

Before BROWN, POLITZ and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

We consider today a constitutional challenge to the Louisiana law entitled "Balanced Treatment for Creation-Science and Evolution-Science in Public School Instruction" (the Act). The statute in essence requires the teaching of creation-science in Louisiana public schools whenever evolution is taught. The district court struck down the law as unconstitutional, holding that there was no legitimate secular purpose for the Act and that the Act would have the effect of promoting religion. We affirm the district court's judgment. In truth, notwithstanding the supposed complexities of religion-versus-state issues and the lively debates they generate, this particular case is a simple one, subject to a simple disposal: the Act violates the establishment clause of the first amendment because the purpose of the statute is to promote a religious belief.

## I

We approach our decision in this appeal by recognizing that, irrespective of whether it is fully supported by scientific evidence, the theory of creation is a religious belief. Moreover, this case comes to us against a historical background that cannot be denied or ignored. Since the two aged warriors, Clarence Darrow and William Jennings Bryan, put Dayton, Tennessee, on the map of religious history in the celebrated *Scopes* trial in 1927 [1] courts have occasionally been involved in the controversy over public school instruction concerning the origin of man. With the igniting of fundamentalist fires in the early part of this century, "anti-evolution" sentiment, such as that in *Scopes*, emerged as a significant force in our society. As evidenced by this appeal, the place of evolution and the theory of creation in the public schools continues to be the subject of legislative action and a source of critical debate. The subject of this appeal, La.Rev.Stat.Ann. §§ 17:286.1 to .7, was enacted in 1981 when the Louisiana legislature added a provision to Louisiana's general school law applicable to all public secondary and elementary schools.[2] The statute *requires* the public schools to give balanced treatment to creation-science and to evolution-science. Creation-science and evolution-science are similarly defined in the statute as "the scientific evidences for creation (or evolution) and the inferences from those scientific evidences." Under the Act no school is required to give any instruction in the subject of the origin of mankind, but if a school chooses to teach either evolution-science or creation-science, it must teach both, and it must give balanced treatment to each theory. In addition, the statute prohibits discrimination against any teacher "who chooses to be a creation-scientist or to teach scientific data which points to creationism."[3]

The plaintiffs, a group of Louisiana educators, religious leaders and parents of children in the Louisiana public schools, challenged the constitutionality of the Act in district court, seeking an injunction and a declaration that the Act violated the Louisiana Constitution and the first amendment of the United States Constitution. The plaintiffs were joined by the Louisiana Board of Elementary and Secondary Education and the Orleans Parish School

---

**1.** *Scopes v. State of Tennessee,* 154 Tenn. 105, 289 S.W. 363 (1927).

**2.** The full text of La.Rev.Stat.Ann. §§ 17:286.1 to .7 is set forth as an appendix to this opinion.

**3.** The statute does not contain a similar provision prohibiting discrimination against teachers who teach evolution.

Board.[4] The defendants-appellants are the Governor, Attorney General and State Superintendent of Education of Louisiana, in their official capacities, the State Department of Education and the St. Tammany Parish School Board.

The action was initially stayed pending the resolution of a separate action brought by the Act's sponsor and others for a judgment declaring the Act constitutional and an injunction to enforce the Act. That lawsuit, however, was dismissed on jurisdictional grounds. *Keith v. Louisiana Department of Education*, 553 F.Supp. 295 (M.D.La.1982). Following the *Keith* decision, the district court lifted its stay and held that the Act violated the Louisiana constitution.[5] On appeal, we certified the state constitutional question to the Louisiana Supreme Court which found no violation of the constitution. *Aguillard v. Treen*, 440 So.2d 704 (La.1983). We then remanded to the district court with instructions to address the federal constitutional questions. *Aguillard v. Treen*, 720 F.2d 676 (5th Cir.1983). The plaintiffs moved for summary judgment in district court, contending that the statute violated the establishment clause of the first amendment as a matter of law. The contentions of the parties before the district court were essentially the same as those advanced on appeal. The plaintiffs argue that the Act is simply another effort by fundamentalist Christians to attack the theory of evolution and to incorporate in the public school curricula the Biblical theory of creation described in the Book of Genesis. The state contends that the purpose and effect of the Act *is* to promote academic freedom and thus is a legislative enactment precisely tailored to serve a legitimate secular interest.

The district court granted the plaintiff's summary judgment motion declaring the Act unconstitutional and enjoining its implementation. The district court reasoned that the doctrine of creation-science necessarily entailed teaching the existence of a divine creator and the concept of a creator was an inherently religious tenet. The court thus held that the purpose of the Act was to promote religion and the implementation of the Act would have the effect of establishing religion. The state appeals that judgment.

## II

The sole issue for our resolution is whether the Balanced Treatment Act violates the first amendment of the United States Constitution. Although many affidavits have been filed by the state concerning the Act's purpose and effect, it is not necessary to detail the factual record. Our disposition requires only that we consider one threshold question: whether the Act has a secular legislative purpose.

## III

### A.

■ We take this opportunity to note initially that, as a general proposition, states have the right to prescribe the academic curricula of their public school systems. We therefore exercise great care and restraint when called upon to intervene in the operation of public schools. *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). Courts, however, have not failed to protect against violations of the first amendment, which forbids all laws "respecting an establishment of religion." *See Epperson*, 393 U.S. at 104, 89 S.Ct. at 270; *School District of Abington v. Schempp*, 374 U.S. 203, 215, 83 S.Ct. 1560, 1567, 10 L.Ed.2d 844 (1963).[6]

---

**4.** Upon agreement of the parties, the court permitted counsel for the American Jewish Congress and the Anti-Defamation League of the B'nai B'rith to submit briefs as amicus curiae urging affirmance of the district court's judgment.

**5.** In an unpublished opinion the district court held that the Act violated the Louisiana constitu-

tion, which grants authority over the public school system to the Board of Elementary and Secondary Education.

**6.** The First Amendment in relevant part provides: "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof...." This prohibition is applicable to the states through the Fourteenth

This bar includes, of course, laws respecting a particular religious belief. Hence, the state's right to prescribe its public school curriculum is limited to the extent that it may not compel or prohibit the teaching of a theory or doctrine for religious reasons. *Epperson*, 393 U.S. at 107, 89 S.Ct. at 272. The vigilant protection of the First Amendment is nowhere more vital than in American public education. *Id.* at 104, 89 S.Ct. at 270.

▪ Although the establishment clause prohibits the enactment of laws respecting an establishment of religion, it is equally certain that total separation of church and state is not possible in an absolute sense, and "[s]ome relationship between government and religious organizations is inevitable." *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 1358, 79 L.Ed.2d 604 (1984) (quoting *Lemon v. Kurtzman*, 403 U.S. 602, 614, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971)). Time and again the Supreme Court has recognized that religion is closely identified with our history and government. *See Schempp*, 374 U.S. at 212, 83 S.Ct. at 1566.[7] Indeed, the Court has observed that "nearly everything in our culture worth transmitting, everything that gives meaning to life, is saturated with religious influences...." *McCollum v. Board of Education*, 333 U.S. 203, 235–36, 68 S.Ct. 461, 477, 92 L.Ed. 649 (1948). Thus, the establishment clause clearly does not require the public sector to be insulated from all that may have religious origin or significance. *Stone v. Graham*, 449 U.S.

39, 45, 101 S.Ct. 192, 196, 66 L.Ed.2d 199 (1980) (Rehnquist, J., dissenting).

▪ Acknowledging the problems inherent in this sensitive area, we must set forth a framework for determining whether the Act is unconstitutional. This inquiry calls for line-drawing but no fixed *per se* rule can be expressed or applied in any particular case. *Lynch*, 104 S.Ct. at 1361. Although the Supreme Court has expressed unwillingness to be confined to any single test or criterion, *id.* at 1362, three principal criteria, nevertheless, have emerged to determine whether a state legislative enactment comports with the establishment clause: (1) whether the statute has a secular legislative purpose; (2) whether the principal or primary effect of the statute advances or inhibits religion; and (3) whether the statute fosters an excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).[8] If a statute fails to satisfy any of these three criteria, it will not survive constitutional scrutiny under the establishment clause. *Stone*, 449 U.S. at 40, 101 S.Ct. at 193; *Karen B. v. Treen*, 653 F.2d 897, 900 (5th Cir.1981). Our decision today requires only that we consider the purpose prong of the *Lemon* test, for as the Supreme Court recently expressed, "[N]o consideration of the second or third criteria is necessary if a statute does not have a clearly secular purpose." *Wallace v. Jaffree*, —— U.S. ——, ——, 105 S.Ct. 2479, 2490, 86 L.Ed.2d 29

---

Amendment. *Stone v. Graham*, 449 U.S. 39, 41 n. 2, 101 S.Ct. 192, 193 n. 2, 66 L.Ed.2d 199 (1980); *School District of Abington v. Schempp*, 394 U.S. 203, 215–16, 83 S.Ct. 1560, 1567–68, 10 L.Ed.2d 844 (1963).

**7.** *See* also *Engel v. Vitale*, 370 U.S. 421, 434, 82 S.Ct. 1261, 1268, 8 L.Ed.2d 601 (1962), ("[T]he history of man is inseparable from the history of religion"); *Zorach v. Clauson*, 343 U.S. 306, 313, 72 S.Ct. 679, 684, 96 L.Ed. 954 (1952) ("We are a religious people whose institutions presuppose a supreme being").

**8.** That the *Lemon* test continues to have vitality is evidenced by recent decisions of the Supreme Court. *See Estate of Thornton v. Caldor, Inc.*, —— U.S. ——, ——, 105 S.Ct. 2914, 2917, 86

L.Ed.2d 557 (1985); *Wallace v. Jaffree*, —— U.S. ——, ——, 105 S.Ct. 2479, 2490, 86 L.Ed.2d 29 (1985); *Lynch*, 104 S.Ct. at 1365; *Stone*, 449 U.S. at 40, 101 S.Ct. at 193. Justice Brennan dissenting in *Lynch* observed that "the court properly looked for guidance to the settled test announced in *Lemon v. Kurtzman*." 104 S.Ct. at 1370. He stated that the court's return to the settled analysis of *Lemon* was gratifying but characterized the application of the *Lemon* test in that particular case as "less than vigorous." *Id.* More recently, the Court in *Wallace* applied only the purpose prong of the *Lemon* test to invalidate an Alabama law permitting a period of silence in the public schools "for meditation or silent prayer." —— U.S. at ——, 105 S.Ct. at 2491.

(1985). The secular purpose requirement is not satisfied by the mere existence of *some* secular purpose if it is shown that the legislature's action was dominated by religious purposes. *Id.* at ——, 105 S.Ct. at 2490; *Lynch,* 104 S.Ct. at 1368 (O'Connor, J., concurring); *Stone,* 449 U.S. at 41, 101 S.Ct. at 194. If the state's actual purpose is to endorse or disapprove of religion, the first prong of the *Lemon* test will not be satisfied. *Wallace,* —— U.S. at —— & n. 42, —— & n. 52, 105 S.Ct. at 2490 & n. 42, 2493 & n. 52; *Lynch,* 104 S.Ct. at 1368 (O'Connor, J., concurring).

### B.

With these principles as our foundation, we now examine the Act itself to determine whether it, in reality, establishes a religious belief. Our decision is not made in a vacuum, nor do we write on a clean slate. We must recognize that the theory of creation is a religious belief. We cannot divorce ourselves from the historical fact that the controversy between the proponents of evolution and creationism has religious overtones.[9] We do not, indeed cannot, say that the theory of creation is to all people solely and exclusively a religious tenet. We also do not deny that the underpinnings of creationism may be supported by scientific evidence. It is equally true, however, that the theory of creation is a theory embraced by many religions. Specifically, we must recognize that evolution has historically been offensive to religious fundamentalists because the theory cannot be reconciled with the Biblical account of the origin of man. Nor can we ignore the fact that through the years religious fundamentalists have publicly scorned the theory of evolution and worked to discredit it. *See Epperson,* 393 U.S. at 98, 107, 89 S.Ct. at 267, 272; *Crowley v. Smithsonian Institution,* 636 F.2d 738, 741–43 (D.C.Cir.

1980); *McLean v. Arkansas Board of Education,* 529 F.Supp. 1255, 1258–60 (E.D. Ark.1982); *Wright v. Houston Independent School District,* 366 F.Supp. 1208, 1209–11 (S.D.Tex.1972), *aff'd per curiam,* 486 F.2d 137 (5th Cir.1973). It is in the light of the fact that the theory of creation is a religious belief and in the light of its historical setting that we look to the plain language of the Act to determine whether it embodies a secular purpose.

We begin by considering the stated purpose of the statute: to "protect academic freedom." Although we must treat the legislature's statement of purpose with deference [10] we are not absolutely bound by such statements or legislative disclaimers. *Stone,* 449 U.S. at 40–43, 101 S.Ct. at 193–94; *McLean,* 529 F.Supp. at 1263. Nor do the remarks of the sponsor or author of a statute control our determination of legislative purpose. *See Karen B.,* 653 F.2d at 900; *McLean,* 529 F.Supp. at 1263.

Although the record here reflects self-serving statements made in the legislative hearings by the Act's sponsor and supporters, this testimonial avowal of secular purpose is not sufficient, in this case, to avoid conflict with the first amendment. *See Stone,* 449 U.S. at 41, 101 S.Ct. at 193–94. Two Fifth Circuit decisions illustrate this proposition. In *Karen B. v. Treen,* we considered the constitutionality of a Louisiana statute providing for student participation in prayer in the public schools. The district court, relying upon the testimony of two legislative sponsors, found a secular legislative purpose. 653 F.2d at 900. In rejecting the sponsor's testimony, we held that the plain language of the statute made apparent its predominantly religious purpose. We observed:

---

**9.** In determining legislative purpose, we may consider, among other things, the historical context of the Act and the sequence of events leading to the passage of the Act. *See Village of Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252, 267, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977); *Epperson,* 393 U.S. at 98–105, 89 S.Ct. at 267–70.

**10.** *See Committee for Public Education & Religious Liberty v. Nyquist,* 413 U.S. 756, 773, 93 S.Ct. 2955, 2965, 37 L.Ed.2d 948 (1973); *McGowan v. Maryland,* 366 U.S. 420, 445, 81 S.Ct. 1101, 1115, 6 L.Ed.2d 393 (1961).

[The state does] not explain ... how the personal asseverations of individual legislators can be more compelling that the expression of secular intent actually embodied in the statute. In fact, the personal testimony of individual proponents, given in court after enactment of the statute, is far less persuasive, since it reflects only the partial perspectives of those legislators and not the collective intention of the entire legislative body. Neither such testimony nor the words of the enactment is sufficient to overcome the obvious religious means employed by the statute. Therefore [the statute] violates the first prong of the [*Lemon*] test.

653 F.2d at 901. In *Lubbock Civil Liberties Union v. Lubbock Independent School District*, 669 F.2d 1038, 1041 (5th Cir.1982), we considered a school policy permitting students to gather on school property before or after school for religious, moral, educational or other similar purposes. In reversing the district court, we analyzed the policy on its face in the context in which it was written and determined "there was no 'pre-eminent' secular purpose." *Id.* at 1044–45 & n. 13.

As in *Karen B.* and *Lubbock*, a review of the plain language of the Balanced Treatment Act convinces us that it has no secular legislative purpose. Although purporting to promote academic freedom, the Act does not and cannot, in reality, serve that purpose. Academic freedom embodies the principle that individual instructors are at liberty to teach that which they deem to be appropriate in the exercise of their professional judgment. The principle of academic freedom abjures state interference with curriculum or theory as antithetical to the search for truth. The Balanced Treatment Act is contrary to the very concept it avows; it requires, presumably upon risk of *sanction* or *dismissal* for failure to comply, the teaching of creation-science whenever evolution is taught. Although states may prescribe public school curriculum concerning science instruction under ordinary circumstances, the compulsion inherent in the Balanced Treatment Act is, on

its face, inconsistent with the idea of academic freedom as it is universally understood. In reaching this conclusion we reject the state's argument that compelled instruction in creation-science is necessary to promote academic freedom because public school teachers believe it illegal to teach creation-science. No court of which we are aware has prohibited voluntary instruction concerning purely scientific evidence that happens, incidentally, to be consistent with a religious doctrine or tenet. It simply does not follow that science instruction violates the Establishment Clause merely because it "happens to coincide or harmonize with the tenets of some or all religions." *McGowan*, 366 U.S. at 442, 81 S.Ct. at 1113; *Crowley*, 636 F.2d at 742.

Not only does the Act fail to promote academic freedom, it fails to promote creation science as a genuine academic interest. If primarily concerned with the advancement of creation-science, the Act, it certainly appears to us, would have required its teaching irrespective of whether evolution was taught. Thus a primary academic interest in creation-science would seem to be gainsaid because the Act requires the teaching of the creation theory only if the theory of evolution is taught.

Finally, this scheme of the statute, focusing on the religious *bete noire* of evolution, as it does, demonstrates the religious purpose of the statute. Indeed, the Act continues the battle William Jennings Bryan carried to his grave. The Act's intended effect is to discredit evolution by counterbalancing its teaching at every turn with the teaching of creationism, a religious belief. The statute therefore is a law respecting a particular religious belief. For these reasons, we hold that the Act fails to satisfy the first prong of the *Lemon* test and thus is unconstitutional.

Nothing in our opinion today should be taken to reflect adversely upon creation-science either as a religious belief or a scientific theory. Nothing in our opinion today should be taken to reflect a hostile attitude toward religion. Rather we seek to give

effect to the first amendment requirement that demands that no law be enacted favoring any particular religious belief or doctrine. We seek simply to keep the government, qua government, neutral with respect to any religious controversy. *See Karen B.* 653 F.2d at 901. The words of Chief Judge Charles Clark have special relevance here: "To say that the Constitution forbids what Louisiana ... [has] done is only to give effect to [the] special constitutional solicitude for the vitality of religion in American life." *Karen B.*, 653 F.2d at 903. The district court's judgment is

AFFIRMED.

## APPENDIX

## TITLE 17 GENERAL SCHOOL LAW

SUB–PART D–2. BALANCED TREATMENT FOR CREATION–SCIENCE AND EVOLUTION–SCIENCE IN PUBLIC SCHOOL INSTRUCTION

### § 286.1. Short title

This Subpart shall be known as the "Balanced Treatment for Creation-Science and Evolution-Science Act."

### § 286.2. Purpose

This Subpart is enacted for the purposes of protecting academic freedom.

### § 286.3. Definitions

As used in this Subpart, unless otherwise clearly indicated, these terms have the following meanings:

(1) "Balanced treatment" means providing whatever information and instruction in both creation and evolution models the classroom teacher determines is necessary and appropriate to provide insight into both theories in view of the textbooks and other instructional materials available for use in his classroom.

(2) "Creation-science" means the scientific evidences for creation and inferences from those scientific evidences.

(3) "Evolution-science" means the scientific evidences for evolution and inferences from those scientific evidences.

(4) "Public schools" mean public secondary and elementary schools.

### § 286.4. Authorization for balanced treatment; requirement for nondiscrimination.

A. Commencing with the 1982–1983 school year, public schools within this state shall give balanced treatment to creation-science and to evolution-science. Balanced treatment of these two models shall be given in classroom lectures taken as a whole for each course, in textbook materials taken as a whole for each course, in library materials taken as a whole for the sciences and taken as a whole for the humanities, and in other educational programs in public schools, to the extent that such lectures, textbooks, library materials, or educational programs deal in any way with the subject of the origin of man, life, the earth, or the universe. When creation or evolution is taught, each shall be taught as a theory, rather than as proven scientific fact.

B. Public schools within this state and their personnel shall not discriminate by reducing a grade of a student or by singling out and publicly criticizing any student who demonstrates a satisfactory understanding of both evolution-science or creation-science and who accepts or rejects either model in whole or part.

C. No teacher in public elementary or secondary school or instructor in any state-supported university in Louisiana, who chooses to be a creation-scientist or to teach scientific data which points to creationism shall, for that reason, be discriminated against in any way by any school board, college board, or administrator.

### § 286.5. Clarifications

This Subpart does not require any instruction in the subject of origins but simply permits instruction in both scientific models (of evolution-science and creation-science) if public schools choose to teach either. This Subpart does not require each individual textbook or library book to give balanced treatment to the models of evolution-science and creation-science; it does not require any school books to be discard-

ed. This Subpart does not require each individual classroom lecture in a course to give such balanced treatment but simply permits the lectures as a whole to give balanced treatment; it permits some lectures to present evolution-science and other lectures to present creation-science.

### § 286.6. Funding of inservice training and materials acquisition

Any public school that elects to present any model of origins shall use existing teacher inservice training funds to prepare teachers of public school courses presenting any model of origins to give balanced treatment to the creation-science model and the evolution-science model. Existing library acquisition funds shall be used to purchase nonreligious library books as are necessary to give balanced treatment to the creation-science model and the evolution-science model.

### § 286.7. Curriculum Development

A. Each city and parish school board shall develop and provide to each public school classroom teacher in the system a curriculum guide on presentation of creation-science.

B. The governor shall designate seven creation-scientists who shall provide resource services in the development of curriculum guides to any city or parish school board upon request. Each such creation-scientist shall be designated from among the full-time faculty members teaching in any college and university in Louisiana. These creation-scientists shall serve at the pleasure of the governor and without compensation.