**Don AGUILLARD, et al.,
Plaintiffs-Appellees,**

v.

**Edwin W. EDWARDS, et al.,
Defendants-Appellants.**

**No. 85–3030.**

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1985.

Kendall L. Vick, Chief Counsel to Atty. Gen., Patricia Nalley Bower, Asst. Atty. Gen., Lisa Keegan, New Orleans, La., Wendell R. Bird, Sp. Asst. Atty. Gen., Atlanta, Ga., A. Morgan Brian, Jr., New Orleans, La., for defendants-appellants.

Samuel I. Rosenberg, New Orleans, La., for Orleans Parish.

John DiGiulio, Baton Rouge, La., Thomas T. Anderson, Sp. Asst. Atty. Gen., Indio, Cal., for La. St. Bd.

Roy K. Burns, Covington, La., for St. Tammany.

Paul, Weiss, Rifkind, Wharton & Garrison, Allan Blumstein, James McLoughlin, Alan Pfeffer, Jack D. Novick, New York City, Andrew M. Weltchek, Ronald L. Wilson, New Orleans, La., for plaintiffs-appellees.

Steven M. Freeman, New York City, for amicus-Anti-Defamation League.

Marc D. Storn, New York City, for amicus American Jewish Congress.

Appeal from the United States District Court for the Eastern District of Louisiana; Adrian G. Duplantier, Judge.

Before BROWN, POLITZ and E. GRADY JOLLY, Circuit Judges.

## ON SUGGESTION FOR REHEARING EN BANC

Before CLARK, Chief Judge, and GEE, ALVIN B. RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, JERRE S. WILLIAMS, GARWOOD, E. GRADY JOLLY, PATRICK E. HIGGINBOTHAM, W. EUGENE DAVIS, ROBERT MADDEN HILL, and EDITH HOLLAN JONES, Circuit Judges.

GEE, Circuit Judge, with whom CLARK, Chief Judge, and REAVLEY, GARWOOD, PATRICK E. HIGGINBOTHAM, ROBERT MADDEN HILL and EDITH HOLLAN JONES, Circuit Judges, join dissenting.

Today our full court approves, by declining review en banc, a panel opinion striking down a Louisiana statute as one "respecting an establishment of religion." The panel reasons that by requiring public school teachers to present a balanced view

of the current evidence regarding the origins of life and matter (if any view is taught) rather than that favoring one view only and by forbidding them to misrepresent as established fact views on the subject which today remain theories only, the statute promotes religious belief and violates the academic freedom of instructors to teach whatever they like.

The *Scopes* court upheld William Jennings Bryan's view that states could constitutionally forbid teaching the scientific evidence for the theory of evolution, rejecting that of Clarence Darrow that truth was truth and could always be taught—whether it favored religion or not. By requiring that the whole truth be taught, Louisiana aligned itself with Darrow; striking down that requirement, the panel holding aligns us with Bryan.

I disagree with this holding; and because we endorse it today, I respectfully dissent.

### BACKGROUND

In 1981 the Louisiana legislature passed the legislation which is the subject of today's controversy. Sections 17:286.1 through 286.7, Louisiana Revised Statutes. Its full text appears as an appendix to the panel opinion, at 765 F.2d 1251, 1258. The general purport of this law is to provide three things:

1. That the "subject of origins" of the universe, of life, and of species need not be taught at all in the public schools of Louisiana; but,

2. That if *either* "creation-science" (defined as "the scientific evidences for creation and inferences from" them) *or* "evolution-science" (parallel definition) be taught, balanced treatment be given the other; and,

3. That, if taught, each be taught as a theory, "rather than as proven scientific fact."

I am as capable as the panel of making an extra-record guess that much, if not most, of the steam which drove this enactment was generated by religious people who were hostile to having the theory of evolution misrepresented to school children as established scientific fact and who wished the door left open to acceptance by these children of the Judeo-Christian religious doctrine of Divine Creation. If so, however, they did not seek to further their aim by requiring that religious doctrine be taught in public school. Instead, they chose a more modest tactic—one that I am persuaded does not infringe the Constitution.

That was to provide, as my summary of the statute indicates, that neither evolution nor creation be presented as finally established scientific fact and that, when evolution is taught as a theory, the scientific evidence for such competing theories as a "big bang" production of the universe or for the sudden appearance of highly developed forms of life be given equal time (and vice versa). As I noted at the outset, the record contains affidavits—some of them by highly-qualified scientists who there proclaim themselves agnostics and believers in evolution as a theory—which affirm that the above propositions are correct: that evolution is not established fact and that there is strong evidence that life and the universe came about in a different manner, one perhaps less inconsistent with religious doctrine. At the least, these affidavits make a fact issue that those propositions are true. For purposes of reviewing the summary judgment which our panel's opinion affirms, then, the propositions stated must be taken as established: there *are* two bona fide views.

It follows that the Louisiana statute requires no more than that neither theory about the origins of life and matter be misrepresented as fact, and that if scientific evidence supporting either view of how these things came about be presented in public schools, that supporting the other must be—so that within the reasonable limits of the curriculum, the subject of origins will be discussed in a balanced manner if it is discussed at all. I see nothing illiberal about such a requirement, nor can I imagine that Galileo or Einstein would have found fault with it. Indeed, so far as I am

aware even Ms. O'Hair has never asked for more than equal time.

Let it be conceded, for purposes of argument, that many of those who worked to get this legislation passed did so with a religious motive. It well may be that many who advocated Louisiana's Sunday closing Law, recently upheld by us, did so from such a motive. There being evident a credible secular purpose for that law, however, we upheld it. *Home Depot, Inc. v. Guste*, 773 F.2d 616 (1985). There can be no doubt that the Louisiana Legislature was empowered under the state constitution to enact the law in question, one mandating a particular course of public school instruction; the Louisiana Supreme Court has squarely so held, on certification from us earlier in the course of this appeal. *Aguillard v. Treen*, 440 So.2d 704 (La.1983).

Despite this, our panel struck the statute down.

## THE PANEL OPINION

The panel's reasoning is simple. *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1972), sets three hurdles before any statute attacked as establishing religion. The panel holds that the Louisiana statute trips over the first, which requires that "the statute must have a secular legislative purpose; ...." *Lemon, supra*, at 612, 91 S.Ct. at 2111. I cannot agree.

The panel opinion chiefly rests upon such Supreme Court authorities as *Lemon* (state aid to church schools), *Stone v. Graham*, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) (posting Ten Commandments in every classroom), and *Wallace v. Jaffree*, — U.S. ——, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (moment of silence for "meditation or voluntary prayer"), as well as on such holdings from our own court as *Lubbock Civil Liberties Union v. Lubbock I.S.D.*, 669 F.2d 1038 (5th Cir.1982) (religious meetings on school property) and *Karen B. v. Treen*, 653 F.2d 897 (5th Cir.1981) (classroom prayer). Such authorities treat of statutes having a direct and clear religious connection, either by way of granting public assistance to religious schools or by requiring or permitting religious activities in public ones. The statute which concerns us today is quite different: it has no direct religious reference whatever and merely requires that the whole scientific truth be taught on the subject if any is.

In order to invalidate it as "establishing religion," it was therefore necessary for the panel to look beyond the statute's words and beyond legislative statements of secular purpose. To strike the statute down, the panel draws upon its visceral knowledge regarding what must have motivated the legislators. It sifts their hearts and minds, divines their motive for requiring that truth be taught, and strikes down the law that requires it. This approach effectually makes a farce of the judicial exercise of discerning legislative intent. The task is admittedly a most difficult and often impossible one, since legislatures are not known for providing clear guidance to those interpreting their works; but it is a task constitutionally required. To disregard so completely the existing manifestations of intent and impose instead one's personal, subjective ideas as to what *must* have been the true sentiment of the Louisiana legislature ignores this constitutional restraint on judicial power.

Moreover, even assuming the panel's guess about legislative sentiment is right, the infirmity of its reasoning becomes immediately evident when it is extended from prescribing what is to be taught to the teaching itself. If it is unconstitutional to *require* secular matter to be taught from a motive to advance religion it must necessarily also be unconstitutional to *teach* it from such a motive. If so, a public school teacher so indiscreet as to admit to teaching the evidence for creation science from a motive to advance religion is subject to being silenced, while one teaching exactly the same matter without such a motive cannot be interfered with. Like a clock that strikes 13, a rule that produces such a result as this cannot be sound.

I await with interest the application of this new mode of constitutional analysis to other statutes. The bigamy laws, for ex-

ample, carry tell-tale indicia of having been passed with a motive to favor the Judeo-Christian religious preference for monogamy, singling it out for adoption over the equally workable Moslem view. Perhaps our court, consulting its intuitive knowledge about what motivates legislators, will presently determine that there can be no secular purpose in such a preferment of one model of the marital relationship over another, especially when the effect of doing so is to espouse the religious doctrine of the two larger religious sects in our country over that of the minority of Moslems. But such intriguing possibilities must await another day, and I return to the case in hand.

I should have thought that requiring the truth to be taught on any subject displayed its own secular warrant, one at the heart of the scientific method itself. Put another way, I am surprised to learn that a state cannot forbid the teaching of half-truths in its public schools, whatever its motive for doing so. Today we strike down a statute balanced and fair on its face because of our perception of the reason why it got the votes to pass: one to prevent the closing of children's minds to religious doctrine by misrepresenting it as in conflict with established scientific laws. After today, it does not suffice to teach the truth; one must also teach it with the approved motive. It may be that the Constitution forbids a state to require the teaching of lies in the classrooms of its public schools; perhaps among its emanations or penumbras there can be found means to invalidate such a law, say, as one mandating that students be taught that the earth is flat or that chattel slavery never existed in this country. It comes as news to me, however, that the Constitution forbids a state to require the teaching of truth—any truth, for any purpose, and whatever the effect of teaching it may be. Because this is the holding that we endorse today, I decline to join in that endorsement and respectfully dissent.

E. GRADY JOLLY, Circuit Judge, responding to dissent.

First, as writer of the panel opinion, I offer my apologies to the majority of this court for aligning it with the forces of darkness and anti-truth. Second, I do not personally align myself with the dissenters in their commitment to the search for eternal truth through state edicts. Third, I commend to the dissenters a serious re-reading of the majority opinion that they may recognize the hyperbole of the opinion in which they join. And, finally, I respectfully submit, the panel opinion speaks for itself, modestly and moderately, if one will allow its words to be carefully heard.